Judge Mills,
delivered the Opinion of the Court.
James €. Rodes, the complainant below, now appellee, being indebted to John D. Young in the sum of $6,000, executed notes for the sum, payable as follows, all were dated the 14th April, 1817: the first was for $1,500, payable six days after date; -the second for $1,500, due 14th July., 1817; the-third for $1,000, due 14th of April, 1818, and the fourth for $2,000, due 1st January, 1819. The two first for $1,500 each, instead of being executed directly from Rodes to J. D. Young, were executed by Samuel Redd to Rodes, and assigned by,him, or rather endorsed by him in blank, to J. D. Young. This appears to have been done on the part of Rodes merely as a form to afford Young additional security, which Redd engaged to become, as endorser, and at the instance of Young, the position of the principal and security was changed, and instead of Redd being endorser for Rodes, Redd became maker and Rodes endorser. The third of $1,000 was made payable to J. D. Young by Rodes, and the fourth was made payable to Will. D. Young, the brother of John, who was not present at the time, and Rodes charges that he never noticed that the name of Will. D. Young was inserted as payee, until after the note was signed. Rodes paid up the first note of $1,500, and took it in. When the second for $1,500 became due Rodes claimed as a discount against it some demands due by notes and judgments, against John D. Young, which were í’ejected, and suit brought on the note, and judgment obtained in the name of Will. D. Young, to whom the blank endorsement was filled up. On the third, of $1,000,-judgment was obtained in the name of Samuel Blair, to whom that note was assigned by John D. Young, and on the fourth judgment was obtained in the name of William 1). Young. To enjoin these three judgments, as many separate bills were filed, claiming offsets or discounts against John D. Young, he being insolvent. *499 These three bills were consolidated by consent of the parties, as one suit, and a decree rendered perpeiuating the injunction as to all three.
Where a ^°“lss0-ry noiliy the6”’ real debtor, buU° bjm» over toCalS6C third person, °r where it is ^ (e0p^ya" the creditor, and it. ap^contrir^ !mco to avoid the set off of might ac-’ quire against j{0e1.ret{1ecre<1~ chancellor will wholly disregard the {o^kingtothe substance only of the allow all the, discounts.
William D. Young sets up demands against John D. Young, for money paid for him as surety and liabilities incurred, and insists that he has a right to collect enough for his indemnity, and that having the legal rigid to the notes, for a valuable consideration, he is entitled to the preference, so that the question narrows itself down to whom this preference is to be given. The demands of both are cslablished by the proof to some extent.
There was nothing said at the date of the original transaction, about the interest of William D. Young,, or that any of the payments were to be made to. him, to secure any demands of his, and the person who witnessed the notes did not observe that one note was made payable to William D. Young. We cannot doubt, from the whole face of the transaction, that John D. Young designed, by shaping the notes ns they are, to keep them and their proceeds at his own disposal, or as he says, to give a preference to what creditors he pleased, as he was deeply inclebted, and to prevent discounts by purchasing claims against him; lienee he so contrived it as to hold two notes on Redd, endorsed in blank by Rodes, ready to be filled up to any person; a third was assigned to Samuel Blair, who, by his own admission, bad no interest in it, and the fourth was in the name of his brother, and of course could be disposed of by him, at the order of John, without his name being known, Under such circumstances, we consider it the duty of the chancellor to reduce the transaction back to, the simple form of notes executed by Rodes to John. D. Young, by considering that as done which ought to have been done, after the matter is stripped of form and device. It results, therefore, that Rodes would he justifiable in purchasing claims against the notes, although part were legally the notes of Redd, and any person to whom the blank endorsement should be filled, up; and also, William D., Young and Blair must stand in the attitude of as-signees of these notes, and must show the hour of. assignment and notice thereof.
If in such case the apparent legal Creditor in the notes acquire the equityinthem, and would resist the debt- or’s set oiF, he must prove notice of his acquisition as of an assignment.
In d suit by the assignee of a judgment for set off, the as*signor must be party.
Mandate*
But as the legal title of one was already in William D. Young, and that known to Rodes within a few moments after its execution, it may be asked, what can he he bound to prove more than that? To this we answer, that he ought to be held to proof of notice of the time when John D. Young agreed that he. should have the equity of the note, and should be bound to prove notice of that agreement, and of the actual existance of an equity or discount due him, as the substitute for the assignment and notice thereof. In this his proof fails. On the contrary John D. Young continued to dispose of these notes, or their contents, by drawing orders for part thereof, which Rodes accepted, and which constitute part of his discounts, and the drawing and accepting and payment of these orders were approved by William D. Young, and particularly be ratified the settlement of $1,000, part of the last note for $2,000 long after Rodes had acquired his discounts now contested. Such conduct, instead of being notice to Rodes that William D. Young was the real owner of the notes, was calculated to inspire a belief of the contrary, and to induce him to think, that the transaction or the real owner in equity was not changed from their original shape and standing, and that John D. Young was the sole proprietor of all the demands when due. Under such circumstances the chancellor did not err on the merits, in giving the preference to the claims of Rodes, which appear to he fair and just.
But there is a defect of parties which is assigned for error, and cannot be gotten over. Among the claims set up by Rodes is a judgment assigned to him from John Tiiford, and one or more assigned by Bushrod Boswell. As judgments are not assignable in law, but assignments thereof only confer an equitable interest, both Tiiford and Boswell became necessary parties to the record, in order that the decision of the question might bar their interest or claim, both as to Rodes and Young, before their judgments were extinguished.
The decree must, therefore, be reversed with costs, and the cause is remanded with directions l® *501 dismiss the bill without prejudice as to these juctgments assigned by Tilford and .Boswell, and to perpetuate the injunction only as to the residue, the complainant shall, in a reasonable time, to be fixed by the court, bring the said Tilford and Boswell before the court-, in which case their claims are to be considered with the other claims, -according to the principles settled by the opinion of this court.
Crittenden and' Wicldiffe, for appellants; Chinn, Barry and Depew, for appellees.